**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 10-cv-00780-WJM-MJW

VON J. PHATHONG, and
JENNIFER D. PHATHONG,

      Plaintiffs,

v.

TESCO CORPORATION (US),

      Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND MOTION TO DISMISS**

---

This matter is before the Court on Defendant Tesco Corporation's (US)

("Tesco's") Combined Motion and Brief in Support of Summary Judgment Pursuant to

Fed. R. Civ. P. 56 (ECF No. 76), and Tesco's Motion to Dismiss Plaintiffs' First

Amended Complaint and Jury Demand Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No.

46). The motions are fully briefed and ripe for adjudication. (*See also* ECF No. 51, 63,

85, 86.) For the following reasons, Tesco's Motion for Summary Judgment is DENIED,

and Tesco's Motion to Dismiss is DENIED as moot.

As a preliminary matter, the Court notes that the two arguments raised in

Tesco's Rule 12(b)(6) Motion to Dismiss – that Tesco is entitled to immunity as a

"statutory employer" under the Colorado Workers' Compensation Act, and that Plaintiffs'

claims are time-barred by the applicable statute of limitations – are the same two

arguments Tesco raises in its pending Rule 56 Motion for Summary Judgment. At the

oral argument on the two pending motions, held by this Court on November 10, 2011,

all parties agreed that Tesco's Motion to Dismiss is subsumed by Tesco's Motion for

Summary Judgment, and that a ruling on Tesco's Motion for Summary Judgment will

effectively moot Tesco's Motion to Dismiss.  *See Brown v. Bd. of Educ. of Pueblo Sch.*

*Dist. No. 1*, No. 05-cv-02079, 2007 WL 389947, at *2 (D. Colo. Feb. 1, 2007).  The

Court thus proceeds to analyze Tesco's Motion for Summary Judgment.

## I.  BACKGROUND

The following facts are not in dispute.  In June 2005, Tesco and EnCana

Corporation ("EnCana") entered into a Daywork Drilling Contract, under which EnCana

contracted out to Tesco the responsibility to conduct natural gas drilling operations at a

drill site in Garfield County, Colorado.  Tesco subsequently hired Plaintiff Von Phathong

("Mr. Phathong") to work as a floor hand, and Mr. Phathong worked for Tesco on a drill

rig at the drill site beginning in September 2005.  On December 13, 2005, at

approximately 3:30 a.m., Mr. Phathong was injured on the job on the drill rig.  Those

injuries, and the conduct that allegedly caused them, form the basis for this action.

Later that day, on December 13, 2005, Tesco sold its entire drilling operations to

Turnkey E&P ("Turnkey"), and Turnkey agreed to perform drilling operations under

Tesco's drilling contracts.  The sale was made retroactive to 12:01 a.m. on December

13, 2005.  Thus, at the time of Mr. Phathong's injury on December 13, 2005, he was an

employee of Turnkey.  (ECF No. 76, at 6 ¶ 33; ECF No. 85, at 4 ¶ 33.)

On December 12, 2007, Mr. Phathong and his spouse Jennifer ("Plaintiffs") filed

a complaint against EnCana in Garfield County District Court ("the EnCana Action").  On

November 5, 2009, the Garfield County District Court entered summary judgment

against Plaintiffs and in favor of EnCana on the ground that EnCana was a "statutory employer" under the Colorado Workers' Compensation Act ("the EnCana Decision"). On January 27, 2011, the Colorado Court of Appeals affirmed the trial court's grant of summary judgment to EnCana.

Plaintiffs filed this action against Tesco on April 6, 2010.  Jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332.  The operative complaint brings three claims:  (1) negligence, (2) premises liability, and (3) loss of consortium.

Tesco has moved for summary judgment, on two primary bases:  (1) that Tesco is a "statutory employer" under the Colorado Workers' Compensation Act, and is therefore immune from suit, and (2) that Plaintiffs' claims are time-barred by the applicable two-year statute of limitations.

## II.  LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).  In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co.,*

*Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

When, as here, "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden on a motion for summary judgment by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotation marks omitted).  If the movant meets this burden, the burden shifts to the nonmovant "to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671 (quotation marks omitted).

### III.  ANALYSIS

**A.     Statutory Employer**

**1.     Choice of Law**

The parties argue over whether Colorado law or Texas law applies to the question of whether Tesco is immune from suit as a "statutory employer" under the applicable workers' compensation laws.  Tesco argues that Colorado law applies because the parties' relationship was centered in Colorado and Mr. Phathong's injury occurred in Colorado.  Tesco also argues that collateral estoppel requires this Court to apply Colorado law, because the EnCana Decision held that Colorado law applies to the same issue.  In response, Plaintiffs argue that Texas law should apply because Mr. Phathong and Tesco entered into their employment agreement in Texas, and Mr. Phathong's workers' compensation claim was filed, and is administered, in Texas. Plaintiffs also argue that collateral estoppel does not apply because the choice of law

decision in the EnCana Action involved different issues.

"A federal court sitting in diversity must apply the choice of law rules of the forum in which it sits." *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). "In resolving choice of law issues in tort actions, Colorado follows the 'most significant relationship' approach of the Restatement (Second) of Conflict of Laws (1971)." *Hawks v. Agri Sales, Inc.*, 60 P.3d 714, 715 (Colo. App. 2001). "In applying the most significant relationship test, courts are to evaluate the various contacts, such as the place where the injury occurred, the residence of the parties, and the place where the parties' relationship is centered, as well as the policies of the interested states." *Id.*

Here, the injury that forms the basis for the action occurred in Colorado, and the allegedly negligent conduct causing the injury occurred in Colorado. Also, the parties' relationship is centered more in Colorado, because Plaintiff was hired to perform work in Colorado at Tesco's drilling site being operated in Colorado. As Plaintiffs point out, this action is not a fight over the payment of workers' compensation benefits, it is a tort action. The Court holds that Colorado law applies to the question of whether Tesco is immune from suit as a "statutory employer" under the applicable workers' compensation laws. *See Stuart*, 271 F.3d at 1225-31.[1]

**2. Merits**

The Court turns to Tesco's argument that it is a "statutory employer" under the Colorado Workers' Compensation Act ("Act"), and is therefore immune from tort liability.

---

[1] Because of this determination, the Court need not, and does not, reach the question of whether collateral estoppel requires the Court to apply Colorado law.

The Act

> grants an injured employee compensation from the employer without regard to negligence and, in return, the responsible employer is granted immunity from common-law negligence liability.  To be afforded this immunity, an employer must be a "statutory employer" as contemplated by the [Act].  Although a given company might not be a claimant's employer as understood in the ordinary nomenclature of the common law, it nevertheless might be a statutory employer for workers' compensation coverage and immunity purposes. . . . [The Act] makes general contractors ultimately responsible for injuries to employees of subcontractors.  Its purpose is to prevent employers from avoiding responsibility under the [Act] by contracting out their regular work to uninsured independent contractors. . . . [W]e hold that the test for whether an alleged employer is a "statutory employer" under [the Act] is whether the work contracted out is part of the employer's "regular business" as defined by its total business operation.  In applying this test, courts should consider the elements of routineness, regularity, and the importance of the contracted service to the regular business of the employer.

*Finlay v. Storage Tech. Corp.*, 764 P.2d 62, 63-64, 67 (Colo. 1988); *see also* Colo. Rev. Stat. § 8-41-401.

As conceded by Tesco, Mr. Phathong was an employee of Turnkey at the time of the accident.  Thus, the question is whether Tesco was a "statutory employer" of Mr. Phathong at the time of the accident.  It appears clear that the original relationships between Mr. Phathong, Tesco, and EnCana created a prototypical example of a chain of employment relationships between an employee (Mr. Phathong), an employer subcontractor (Tesco), and a general contractor who constituted a "statutory employer" under the Act (EnCana).  The question is what effect the sale of Tesco's drilling operations to Turnkey had on that chain of employment relationships.  Tesco advances the argument that, through that sale, Turnkey became a subcontractor of both EnCana and Tesco.  Thus, Tesco represents the relationship between these four entities/people graphically in their briefs as a four-link vertical chain from EnCana, to Tesco, to

Turnkey, to Mr. Phathong.  Tesco further argues that the EnCana Decision – that EnCana was a "statutory employer" under the Act – necessarily requires a finding (based on collateral estoppel) that Tesco also was a "statutory employer" under the Act.

The Court holds that Tesco has not carried its burden of showing that it is entitled to judgment as a matter of law on the issue of Tesco's immunity as a "statutory employer" at the time of the accident.  A reasonable interpretation of the evidence is that, in terms of the "statutory employer"–employer–employee relationship, the sale of Tesco's drilling operations to Turnkey ***replaced*** Tesco in that chain (as the employer) with Turnkey, a replacement that took effect prior to the accident.  In other words, while the original relationships constituted a three-link vertical chain between EnCana ("statutory employer"), Tesco (employer), and Mr. Phathong (employee), the sale constituted a ***horizontal*** transfer of "employer" status from Tesco to Turnkey, resulting in a new three-link vertical chain between EnCana ("statutory employer"), Turnkey (employer), and Mr. Phathong (employee).  Based on that reasonable interpretation of the evidence, natural gas drilling was not part of Tesco's "regular business as defined by its total business operation" at the time of the accident.  *Finlay*, 764 P.2d at 67.

Tesco argues that it was not shut out of the new relationship because it still remained responsible to EnCana under the original contracts between EnCana and Tesco.  However, Tesco's continuing responsibilities to EnCana does not necessarily mean that it remained in the ***employment*** chain involving EnCana, Turnkey, and Mr. Phathong.  Also, contrary to Tesco's argument, a reasonable interpretation of the evidence is that, following the sale, Turnkey was not a "subcontractor" of Tesco in the

*employment* chain under the meaning of the Act.  *See Finlay*, 764 P.2d at 64 ("[The

Act] makes general contractors ultimately responsible for injuries to employees of

subcontractors.  Its purpose is to prevent employers from avoiding responsibility under

the [Act] by contracting out their regular work to uninsured independent contractors.").

Further, because the evidence can reasonably be viewed in the aforementioned way,

Tesco's argument is unpersuasive that collateral estoppel necessarily requires a finding

that it is a "statutory employer" (because EnCana has been found to be a "statutory

employer").  Tesco is therefore not entitled to summary judgment on this issue.[2]

## B.    Statute of Limitations

Tesco also argues that Plaintiffs' claims are time-barred by the applicable statute

of limitations, namely, the two-year statute of limitations applicable to negligence and

premises liability claims found in Colorado Revised Statute § 13-80-102(1)(a) & (I).  It is

undisputed that Mr. Phathong's injury occurred on December 13, 2005, and Plaintiffs

did not file this action until April 6, 2010.

Plaintiffs do not dispute that the two-year statute of limitations set forth in

---

[2]  The evidence cited by Tesco in support of its argument that it is a "statutory employer"
is not sufficiently persuasive to entitle it to summary judgment.  By far the most repeated
citations are to alleged judicial admissions by Plaintiffs during the EnCana Action.  Those
alleged judicial admissions by Plaintiffs were:  "Texas law would apply to resolve the question of
whether EnCana is responsible for the personal injury suffered by Mr. Phathong when he was
working for Tesco and Turnkey in Colorado" and "There is no dispute that Tesco and Turnkey
were sub-contractors of EnCana."  Tesco implicitly argues that these alleged judicial admissions
establish that *both* Tesco and Turnkey were subcontractors in the employment chain between
EnCana and Mr. Phathong *at the time of the accident*.  The Court disagrees.  These
statements were made in arguing whether EnCana was a "statutory employer" under the Act.
One can reasonably interpret these statements to stand for the proposition that Tesco – before
the sale only – and Turnkey – after the sale only – were subcontractors in the employment chain
between EnCana and Mr. Phathong.  They do not necessarily constitute judicial admissions that
all four entities were in the employment chain at the time of the accident.

Colorado Revised Statute § 13-80-102(1)(a) & (I) applies to their claims.  However, they argue that their claims did not accrue, for purposes of beginning to run the limitations period, until the spring of 2009 during discovery of the EnCana Action.  It was at that point, they allege, that they first learned that the sale from Tesco to Turnkey was made retroactive to 12:01 a.m. on the day of the accident.  Up until the spring of 2009, they argue, they thought Tesco was immune from suit as the actual employer of Mr. Phathong at the time of the accident.  Once they allegedly first realized in the spring of 2009 that Turnkey, not Tesco, was Mr. Phathong's employer at the time of the accident, they learned that Tesco was not immune from suit as an employer of Mr. Phathong. They argue that the statute of limitations therefore did not begin to run until the spring of 2009, and thus their filing of this action approximately one year later was timely.

In response, Tesco argues that Plaintiffs were not sufficiently diligent in uncovering the retroactive nature of the agreement between Tesco and Turnkey.  In support of that argument, Tesco points out that employees on the rig were aware by January 2006 that Tesco had transferred its drilling operations to Turnkey, and that Mr. Phathong was definitively notified in August 2006 that he was an employee of Turnkey. They also argue generally that Plaintiffs' attorneys in the EnCana Action did not act with due diligence in uncovering the retroactive nature of the sale, before and during litigation of the EnCana Action.

In Colorado, "a cause of action for injury to person, property, reputation, possession, relationship, or status shall be considered to accrue on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence."  Colo. Rev. Stat. § 13-80-108(1).  "A claim for relief does not

9

accrue until the plaintiff knows, or should know, in the exercise of reasonable diligence, all material facts essential to show the elements of that cause of action." *Miller v. Armstrong World Indus., Inc.*, 817 P.2d 111, 113 (Colo. 1991) (quotation marks omitted). The requirement of "reasonable diligence" is an objective standard, and "does not reward denial or self-induced ignorance." *Sulca v. Allstate Ins. Co.*, 77 P.3d 897, 900 (Colo. App. 2003).

The Court holds there is a genuine dispute of material fact as to when Plaintiffs, in the exercise of reasonable diligence, should have known that they had a viable cause of action against Tesco.[3] Tesco's argument that the rig workers learned in January 2006 that they were employed by Turnkey, and that Mr. Phathong definitively learned in August 2006 that he was employed by Turnkey, is unpersuasive because this evidence does not conclusively demonstrate that the workers knew that they were employees of Turnkey **as of December 13, 2005 at 3:30 a.m.**, the date and time of the accident.

---

[3] Tesco emphasizes the language from Colo. Rev. Stat. § 13-80-801 that the question is when a plaintiff learns of "the injury and its cause," and not when a plaintiff learns that a particular defendant owes a duty of care to the plaintiff. However, the "cause" of an injury under Colo. Rev. Stat. § 13-80-801 is open to numerous different interpretations, depending on how broadly one interprets the term "cause." And it is properly construed broadly given that the Colorado Supreme Court has interpreted the statute to mean the date on which a plaintiff knew or should have known "all material facts essential to show the elements of that cause of action." *See Miller*, 817 P.2d at 113.

Tesco cites to *Lavarto v. Branney*, 210 P.3d 485 (Colo. App. 2009), in which the court stated that "a plaintiff is responsible for determining who is liable for her injury and for doing so before the statute of limitations expires." *Id.* at 489. *Lavarto* is distinguishable on its facts, and this statement from *Lavarto* should not be read so broadly as to preclude an action by a plaintiff who did not learn through reasonable diligence during the limitations period that he had a viable cause of action against a particular defendant. Notably, *Lavarto* distinguished a case more factually similar to this action, in which the Colorado Supreme Court did not fault a plaintiff for failing to name a particular defendant in his original complaint, where the plaintiff intended to sue the owner of a particular newspaper, but did not realize the newspaper had been sold to an entity not named as a defendant in the original complaint. *See Dillingham v. Greeley Pub. Co.*, 701 P.2d 27 (Colo. 1985); *see also Lavarto*, 210 P.3d at 489-90.

Also, Tesco's argument that Plaintiff's counsel through reasonable diligence should have uncovered the retroactive nature of the sale long before they did is unpersuasive for purposes of this motion for summary judgment.  It is a general argument unsupported by any factual specifics.  The fact of the matter is that Plaintiffs did not file the EnCana action until December 2007.  Thus, for them to be barred by the statute of limitations here, they would have had to learn of the retroactive nature of the sale within the first four months of litigating the EnCana Action (because if they learned of the information after April 2008, they would not be barred by filing this action in April 2010).  The record is unclear regarding whether this was information solely within the control of Tesco and Turnkey, and there are arguments to be made on both sides whether Plaintiffs' alleged failure to uncover this evidence until the spring of 2009 was reasonable.  A jury could reasonably conclude that Plaintiffs could not have reasonably learned of the information until the spring of 2009.  Tesco is thus not entitled to summary judgment on the ground that the action is time-barred.[4]

## IV.  CONCLUSION

Based on the foregoing, the Court hereby ORDERS as follows:

(1)     Defendant Tesco Corporation's (US) Combined Motion and Brief in Support of Summary Judgment Pursuant to Fed. R. Civ. P. 56 (ECF No. 76) is DENIED; and

(2)     Defendant Tesco Corporation's (US) Motion to Dismiss Plaintiffs' First

---

[4] Tesco's argument that Plaintiffs are forum shopping by suing Tesco in this Court is hollow.  Tesco admitted during oral argument before this Court on November 10, 2011 that Plaintiffs attempted to add Tesco as a defendant in the state court action against EnCana, but Tesco successfully opposed its addition as a defendant in that action.

Amended Complaint and Jury Demand Pursuant to Fed. R. Civ. P.

12(b)(6) (ECF No. 46) is DENIED as moot.

Dated this 30th day of November, 2011.

BY THE COURT:

William J. Martínez
United States District Judge