**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 10-cv-00780-WJM-MJW

VON J. PHATHONG, and
JENNIFER D. PHATHONG,

    Plaintiffs,

v.

TESCO CORPORATION (US),

    Defendant.

**ORDER REGARDING ISSUES RAISED IN TRIAL BRIEFS**

This matter is before the Court on the trial briefs filed by Plaintiffs and Defendant on May 25, 2012. (ECF No. 142, 143.) The trial briefs address four issues identified by the parties and the Court (at the Final Trial Preparation Conference) as needing further briefing in preparation for the trial of this action, set to commence on June 4, 2012. The Court addresses each issue, the parties' arguments, and the Court's decisions in the discussion and analysis that follows.

**I.    Negligence vs. Premises Liability**

In their trial briefs, the parties brief the issue of whether Plaintiffs should be allowed to pursue a simple negligence claim against Defendant, or instead whether the claim must be brought under the Premises Liability Statute, Colorado Revised Statute § 13-21-115. (ECF No. 142, at 1-3; ECF No. 143, at 1-4.) Plaintiffs bring both a simple negligence claim and a premises liability claim in their operative First Amended

Complaint.  (ECF No. 44, ¶¶ 42-53.)[1]  The parties agree that one cannot ultimately pursue both theories of relief: if the claim falls within the Premises Liability Statute it must be brought solely under that Statute; if it does not fall within the Premises Liability Statute it may be pursued through a simple negligence claim.  *See also Vigil v. Franklin*, 103 P.3d 322, 328-29 (Colo. 2004).  Defendant argues that the Premises Liability Statute applies, while Plaintiffs argue that it does not apply.

As an initial point, contrary to Defendant's argument, Plaintiffs are not bound by the factual allegations in their Complaint that the Premises Liability Statute applies in this case.  Instead, the law allows Plaintiffs to have pleaded alternative theories of recovery, even though inconsistent.  *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."); Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").

The question is what the undisputed evidence indicates as to whether the Premises Liability Statute applies here.  Colorado Revised Statute § 13-21-115(2) provides, "In any civil action brought against a landowner by a person who alleges injury occurring while on the real property of another and by reason of the condition of such property, or activities conducted or circumstances existing on such property, the landowner shall be liable [under this statute]."  The parties' arguments center around whether Defendant should be deemed a "landowner" under the statute.  The statute

---

[1] Plaintiffs also brings a loss of consortium claim.

specifically states that, "[f]or purposes of [the statute], 'landowner' includes, without limitation, an authorized agent or a person in possession of real property and a person legally responsible for the condition of real property or for the activities conducted or circumstances existing on real property." Colo. Rev. Stat. § 13-21-115(1).

The Court does not have sufficient information before it to determine whether Defendant should be deemed a "landowner" under the Premises Liability Statute, and therefore whether the Statute applies here. As a consequence, the Court defers ruling on this issue. The Court plans to affirmatively resolve this issue prior to the case being submitted to the jury, after hearing and evaluating the evidence put on at trial as to this specific issue.

## II.   Designation of Non-Parties at Fault

The parties' trial briefs also address the issue of whether Defendant's designations of certain non-parties at fault should be stricken. On August 2, 2010, Defendant filed a Designation of Non-Parties at Fault, designating, *inter alia*, Turnkey E&P Corporation ("Turnkey") and EnCana Oil & Gas (USA) Inc. ("EnCana"). (ECF No. 27.) Regarding Turnkey, Defendant argues that Turnkey was the legal employer of Mr. Phathong at the time of the accident, and so Turnkey was responsible for the safety on the drill rig at the time of the accident. (*Id.* ¶ 2.) Regarding EnCana, Defendant argues that EnCana was the leaseholder at the site, and was therefore a "landowner" under the Premises Liability Statute responsible for ensuring the safety of Mr. Phathong, an invitee on the property. (*Id.* ¶ 1.)

### A.   Turnkey

In its trial brief, Defendant defends its designation of Turnkey as a non-party at

fault in the same (and only) way: that Turnkey was the legal employer of Mr. Phathong at the time of the accident, and was therefore responsible for the safety of Mr. Phathong and its other employees. (ECF No. 143, at 9-10.) Plaintiffs ask the Court to strike the designation of Turnkey, arguing that Turnkey had no involvement in the actual operations on the drill rig at the time of the accident. (ECF No. 142, at 7-9.)

As background, and as explained in this Court's Order denying Defendant's Motion for Summary Judgment (ECF No. 103, at 2-3), Turnkey purchased Defendant's drilling operations shortly after the accident occurred, but the sale was made retroactive to a date and time approximately three-and-one-half hours prior to the accident. It is an understatement to say that this fact has created more complexity to this case than would otherwise be present. The retroactivity of the sale means that, as a legal matter, Turnkey was Mr. Phathong's employer at the time of the accident. However, it is also clear that, during the early morning hours of December 13, 2005 when the accident occurred, Defendant was Mr. Phathong's employer (a status that was later undone by the retroactive sale). The question is, under these unique circumstances, who among Defendant and Turnkey, if anyone, can be found negligent or at fault for the accident that occurred.

Colorado Revised Statute § 13-21-111.5(3)(a) provides, "[T]he finder of fact in a civil action may consider the degree or percentage of negligence or fault of a person not a party to the action, based upon evidence thereof, which shall be admissible, in determining the degree or percentage of negligence or fault of those persons who are parties to such action." Black's Law Dictionary defines negligence as "[t]he failure to exercise the standard of care that a reasonably prudent person would have exercised in

a similar situation; any conduct that falls below the legal standard established to protect others against unreasonable risk of harm . . . . The term denotes culpable carelessness." It defines fault as "[a]n error or defect of judgment or of conduct; any deviation from prudence or duty resulting from inattention, incapacity, perversity, bad faith, or mismanagement."[2]

Colorado Revised Statute § 13-21-111.5(3)(a), and the corresponding definitions of "negligence" and "fault," require a non-party at fault to have acted or failed to act in a negligent or otherwise wrongful way, and that negligence or fault must have caused the harm. However, Defendant's only basis for seeking to apportion fault to Turnkey is that, following the accident, Turnkey purchased Defendant's drilling operations with the sale made retroactive to a time before the accident. Under these facts, Turnkey had absolutely no actual, "on the ground" involvement in the operations on the drill rig that resulted in the December 13, 2005 accident. Nor has Defendant pointed to any evidence that Turnkey had any involvement prior to the accident in training the workers involved in the accident. While the retroactive sale changed who Mr. Phathong's legal employer was at the time of the accident, such a retroactive sale cannot change the facts regarding who, if anyone, caused the accident by a negligent act or negligent failure to act.[3] Given that Defendant has based its designation of Turnkey solely on the

---

[2] The Colorado Court of Appeals has elaborated that negligence or fault means "a wrong tendency, course, or act," "bad faith or mismanagement," "a failure to do what is right," "a wrongdoing of an excusable kind," or "a failure to do something required by law or the doing of something forbidden by law." *Harvey v. Farmers Ins. Exch.*, 983 P.2d 34, 38 (Colo. App. 1998).

[3] Of course, if Turnkey, through its purchase of Defendant's drilling operations, agreed to assume any and all liability of Defendant incurred following the retroactive sale date and time, Defendant would likely to entitled to recover from Turnkey for any liability Defendant incurs in this action. However, the issue of contractual assumption of liability for negligence is entirely

5

post-accident sale of Defendant's operations to Turnkey, Turnkey cannot be found to have any actual "negligence" or "fault" in causing the accident. Defendant's designation of Turnkey as a non-party at fault will therefore be stricken.

### B.     EnCana

In their trial brief, Plaintiffs also seek to strike Defendant's designation of EnCana as a non-party at fault. (ECF No. 142, at 9-10.) The undisputed evidence indicates that EnCana was the general contractor (and Defendant was the subcontractor) of the drilling operations at the time of the accident. (*See* ECF No. 103, at 2-3.) Thus, unlike Turnkey, EnCana was involved in the drilling operations *at the very time of the accident*, if only through a contractual relationship. Defendant properly points out that Plaintiffs sued EnCana in state court over this same accident, so cannot now be heard to disclaim EnCana's involvement and potential fault.

Plaintiffs' only argument for why Defendant's designation of EnCana should be stricken is that Defendant, through its contract with EnCana, agreed to hold EnCana harmless for any liability that EnCana might incur. This argument is properly rejected for the reason stated above: the issue of whether Defendant agreed to hold EnCana harmless under a contract which binds only those two entities is entirely different and distinct from the issue of whether EnCana itself acted or failed to act in a negligent manner *vis a vis Plaintiffs*, and in so doing caused the accident. Therefore, the Court declines to strike Defendant's designation of EnCana as a non-party at fault.

---

different and distinct form the issue of who, if anyone, was actually negligent or at fault for the accident that occurred.

### III.     Collateral Estoppel

In their trial brief, Plaintiffs argue that the Court should apply collateral estoppel to bar Defendant's litigation of the issue of whether the December 13, 2005 accident on the drill rig caused Mr. Phathong's cervical spine condition ("the causation issue"). (ECF No. 142, at 3-7.)  In Mr. Phathong's workers compensation case in Texas, it was ultimately found that Mr. Phathong "did prove by a preponderance of the evidence that his accident of December 13, 2005 was a producing cause of his cervical spine condition." (ECF No. 142-1, at 7 of 19.)  Defendant argues that collateral estoppel does not apply because there is insufficient indication that the causation issue was fully and fairly litigated in the Texas workers compensation proceeding, and argues that Defendant was not a party to that proceeding and is not in privity with any party to that proceeding.  (ECF No. 143, at 4-8.)

As Plaintiffs correctly contend, Texas law governs the issue of whether to apply collateral estoppel to the causation issue decided in the Texas workers compensation case.  *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985); *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *Wilkinson v. Pitkin Cnty. Bd. of Cnty. Comm'rs*, 142 F.3d 1319, 1322 (10th Cir. 1998); *Fed. Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 385 (10th Cir. 1987).  Under Texas law,

> A party seeking to assert the bar of collateral estoppel must establish that (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action.  Strict mutuality of parties is no longer required.  To satisfy the requirements of due process, [however, it is] necessary that the party against whom the doctrine is asserted was a party or in privity with a party in the first action.

*Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801-02 (Tex. 1994) (citations and emphasis omitted). Texas courts have shown a repeated willingness to give preclusive effect, or at the very least to entertain arguments that collateral estoppel applies, to issues resolved in workers compensation proceedings. *See, e.g., Childs v. Haussecker*, 974 S.W. 2d 31, 43-44 (Tex. 1998) (suggesting that collateral estoppel would be properly applied to issues resolved in workers compensation proceedings); *Jones v. Ill. Emp'rs Ins. of Wausau*, 136 S.W.3d 728, 737-38 (Tex. App. 2004) (applying collateral estoppel to decision by workers compensation board); *see also Cortez v. Liberty Mut. Fire Ins. Co.*, 885 S.W.2d 466, 470 (Tex. App. 1994); *Medina v. El Paso Mach. & Steel Works, Inc.*, 740 S.W.2d 99, 101 (Tex. App. 1987).

Under the circumstances present here, Plaintiffs have not met their burden of showing that collateral estoppel applies. *See In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 377 (Tex. App. 2000) ("Collateral estoppel is an affirmative defense and as such, the party asserting it has the burden of pleading and proving its elements."). In particular, Plaintiffs have not met their burden of showing that Defendant "was a party or in privity with a party in the first action." *Sysco Food Servs.,* 890 S.W.2d at 802. It is undisputed that Defendant was not a party to the workers compensation proceedings. Instead, Zurich American Insurance Company ("Zurich") defended the workers compensation case. Thus, the question is whether Defendant was "in privity" with Zurich.

> Privity connotes those who are in the law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right. However, privity is not established by the mere fact that persons may happen to be interested in the same question or in proving the same facts.

8

*Haire v. Nathan Watson Co.*, 221 S.W.3d 293, 299 (Tex. App. 2007) (citation omitted).

> Although the circumstances of each case must be examined, generally, parties are in privity for purposes of collateral estoppel when: (1) they control an action even if they are not parties to it; (2) their interests are represented by a party to the action; or (3) they are successors in interest, deriving their claims through a party to the prior action.

*HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 890 (Tex. 1998).

The undisputed evidence indicates that Zurich was the workers compensation carrier for both Defendant and Turnkey,[4] the workers compensation claim was originally filed under Defendant's policy, but that at some point the claim was transferred to Turnkey's policy given the fact that Turnkey was the legal employer of Mr. Phathong at the time of the accident. (*See, e.g.*, ECF No. 76, at 9-10 ¶¶ 53-54 (and evidence cited therein); ECF No. 85, at 6-7 ¶¶ 53-54 (and evidence cited therein).) Although the record does not indicate when the claim was transferred, it can at least be said that Zurich defended the workers' compensation case on behalf of Turnkey during the later stages of those proceedings. Here, the question is whether to give preclusive effect to the decision reached at the *conclusion* of the workers compensation proceedings. Also, significantly, there is no indication in the record that Defendant and Turnkey are somehow closely affiliated (*e.g.*, parent and subsidiary, alter egos). Under these circumstances, Plaintiffs have not met their burden of showing that Defendant sufficiently "controlled" the workers compensation proceedings, that Zurich was representing Defendant's interests during all key points in the workers compensation

---

[4] Plaintiffs unconvincingly emphasize the importance of this point, although in reality the fact that a large insurance company happened to have issued insurance policies to both Defendant and Turnkey is not significant.

proceedings, or that Defendant is a successor in interest to Zurich.[5]  Therefore, Plaintiffs have not met their burden of showing that due process allows the Court to apply collateral estoppel as to the causation issue.

## IV.     Conclusion

In accordance with the foregoing, the Court ORDERS as follows:

(1)     The Court DEFERS RULING on the issue of whether, in addition to the loss of consortium claim, Plaintiffs' other claim is properly construed as a simple negligence claim or a premises liability claim.  The Court plans to resolve that issue before the case is submitted to the jury;

(2)     Defendant's designation of Turnkey E&P Corporation as a non-party at fault (ECF No. 27, ¶ 2) is hereby STRICKEN;

(3)     The Court DECLINES to strike Defendant's designation of EnCana Oil & Gas (USA) Inc. as a non-party at fault; and

(4)     Collateral estoppel does not bar Defendant's ability to contest at trial the issue of whether in fact the December 13, 2005 accident on the drill rig caused Mr. Phathong's cervical spine condition.

---

[5] Plaintiffs highlight other connections between Defendant and Zurich, for example, that Steadfast Insurance Company, a subsidiary of Zurich, is Defendant's liability insurance carrier providing coverage in this action, and that Zurich therefore has been involved in settlement negotiations in this action. (ECF No. 142, at 6-7.) Plaintiffs attempt to connect the dots by arguing that Zurich wants to get "a second bite at the apple and a better result that will improve Zurich's bottom line." (*Id.* at 7.) Although Plaintiffs attempt to frame this action as one against Zurich, the Court cannot so easily disregard the fact that Tesco Corporation, not Zurich, is the Defendant in this action.  Further, the Court cannot so easily disregard the distinction between a workers compensation case against Zurich (representing Turnkey's interests as a *workers compensation* carrier) and this action brought against Tesco Corporation (where a related entity to Zurich is the *liability insurance* carrier).  Privity is not met merely because the same large insurer may be on the hook financially through a tangled web involving two different, unaffiliated insureds under two different types of insurance policies.

Dated this 31st day of May, 2012.

BY THE COURT:

_____
William J. Martínez
United States District Judge