**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 10-cv-00780-WJM-MJW

VON J. PHATHONG, and
JENNIFER D. PHATHONG,

     Plaintiffs,

v.

TESCO CORPORATION (US),

     Defendant.

---

**ORDER DENYING DEFENDANT'S RULE 50(b) MOTION
OR, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL**

---

On April 6, 2010, Plaintiffs Von J. Phathong and Jennifer D. Phathong brought

this action against Defendant Tesco Corporation (US) based on injuries Mr. Phathong

sustained on December 13, 2005 while working on Defendant's drill rig in Rifle,

Colorado.  (ECF No. 1; *see also* ECF No. 44.)  Jurisdiction is based on diversity of

citizenship under 28 U.S.C. § 1332.  (*Id.* at 1.)

On June 12, 2012, after a seven-day jury trial, the jury returned a verdict against

Defendant Tesco Corporation (US), and in favor of Plaintiff Von Phathong on his

negligence claim and Plaintiff Jennifer Phathong on her loss of consortium claim.  (ECF

No. 175, 175-10.)  The jury awarded Mr. Phathong $2,556,000 in compensatory

damages and $1,500,000 in punitive damages, awarded Ms. Phathong $75,000 in

compensatory damages, and attributed to Defendant 90 percent of the negligence that

caused Mr. Phathong's injuries.  (ECF No. 175-10.)[1]  After the Court reduced the

compensatory damage awards based on the jury's allocation of fault (ECF No. 177),

judgment was entered on June 19, 2012 in favor of Mr. Phathong and against

Defendant in the amount of $4,283,648.96 in compensatory damages, punitive

damages, and pre-judgment interest; and in favor of Ms. Phathong and against

Defendant in the amount of $81,679.84 in compensatory damages and pre-judgment

interest (ECF No. 178).

Currently pending before the Court is Defendant's Rule 50(b) Motion or, in the

Alternative, a Motion for a New Trial ("Motion").  (ECF No. 181.)  Plaintiffs have filed a

Response to the Motion (ECF No. 186), and Defendant has filed a Reply (ECF No.

190).  The Motion is now ripe for adjudication.  For the following reasons, Defendant's

Motion is DENIED.

## I.  LEGAL STANDARDS

Judgment as a matter of law is appropriate where "a party has been fully heard

on an issue during a jury trial and the court finds that a reasonable jury would not have

a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P.

50(a)(1).  Stated another way, "[a] directed verdict is justified only where the proof is all

one way or so overwhelmingly preponderant in favor of the movant so as to permit no

other rational conclusion."  *Hinds v. Gen. Motors Corp.*, 988 F.2d 1039, 1045 (10th Cir.

1993).  In reviewing a Rule 50 motion, the Court must draw all reasonable inferences in

favor of the nonmoving party.  *Wagner v. Live Nation Motor Sports, Inc.*, 586 F.3d 1237,

---

[1] The jury attributed ten percent of the fault to non-party EnCana Oil & Gas (USA).  (*Id.*)

1244 (10th Cir. 2009).

Where a party properly moves for judgment as a matter of law prior to the case being submitted to the jury, that party may renew the motion after the jury returns its verdict. *See* Fed. R. Civ. P. 50(b); *Atchley v. Nordam Group, Inc.*, 180 F.3d 1143, 1147-48 (10th Cir. 1999). "The renewed motion under Rule 50(b) cannot assert grounds for relief not asserted in the original motion [under Rule 50(a)]." *Marshall v. Columbia Lea Reg'l Hosp.*, 474 F.3d 733, 739-40 (10th Cir. 2007). The Court applies the same legal standard to a renewed motion under Rule 50(b) as is applied to a Rule 50(a) motion for judgment as a matter of law. *See Hysten v. Burlington N. Santa Fe Ry. Co.*, 530 F.3d 1260, 1269-70 (10th Cir. 2008). In resolving a Rule 50(b) motion, the Court "will not weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury." *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1268 (10th Cir. 2000).

With the filing of a Rule 50(b) motion, the moving party "may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b). Federal Rule of Civil Procedure 59 allows a court to grant a new trial after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Where, as here, a party's motion for a new trial is based on a court's alleged error during trial, the motion should only be granted if the "the error was prejudicial and affects the party's substantial rights," *i.e.*, if "the claimed error substantially and adversely affected the party's rights." *Henning v. Union Pacific R. Co.*, 530 F.3d 1206, 1217 (10th Cir. 2008) (citations and internal quotations omitted).

"In diversity cases, federal law governs whether [judgment as a matter of law] or

3

a new trial is appropriate, but the substantive law of the forum state governs analysis of

the underlying claim[s]." *Valley View Angus Ranch, Inc. v. Duke Energy Field Servs.,*

*LP*, 410 F. App'x 89, 94-95 (10th Cir. 2010).

## II.  ANALYSIS

As further background, on June 8, 2012, at the close of Plaintiffs' evidence at

trial, Defendant moved for judgment as a matter of law under Federal Rule of Civil

Procedure 50(a) on several bases, and the Court reserved ruling on the Motion.  Then,

at the close of all the evidence at trial (on the same day), Defendant renewed its Rule

50 Motion, and Plaintiffs also moved for judgment as a matter of law under Rule 50 as

to certain issues.  The Court denied Defendant's Rule 50 Motion, and granted in part

and denied in part Plaintiffs' Rule 50 Motion.

Now, post-trial, Defendant has filed a renewed motion for judgment as a matter

of law under Rule 50(b) or for a new trial under Rule 59.  The Court addresses each of

Defendant's arguments presented in its Motion in turn.

## A.      Rule 50(b) Motion for Judgment as a Matter of Law

### 1.      Actual Employer

Defendant first argues that the Court should enter judgment as a matter of law in

favor of Defendant because Defendant is immune from suit as Mr. Phathong's actual

employer under the applicable workers' compensation laws.  (ECF No. 181, at 5-6.)[2]  As

_____

[2] "The statutory scheme created by the [Colorado] Workers' Compensation Act . . .
grants an injured employee compensation from his or her employer without regard to
negligence, and it grants the employer immunity from common law negligence liability."
*Humphrey v. Whole Foods Market Rocky Mountain/Sw. L.P.*, 250 P.3d 706, 708 (Colo. App.
2010).  In this Court's Order denying Defendant's Motion for Summary Judgment, the Court
agreed with Defendant that the workers' compensation laws of Colorado, not Texas, apply in

Plaintiffs emphasize, Defendant has raised this argument repeatedly throughout this litigation, including in both of its Rule 50 motions at trial.

At the time of the accident at issue – December 13, 2005 at approximately 3:30 a.m. – it is undisputed that Defendant was Mr. Phathong's employer and was responsible for the safety of its workers on the drill rig.  However, it is also undisputed that later that day, Defendant sold its drilling operations to a company called Turnkey E&P, and made the sale retroactive to 12:01 a.m. on December 13, 2005 – approximately three-and-a-half hours prior to the accident.  Based on the retroactive nature of the sale, the Court has repeatedly held that Turnkey, and not Defendant, was Mr. Phathong's legal employer at the time of the accident for immunity purposes, which is reflected by the fact that Turnkey ultimately paid Mr. Phathong's workers' compensation benefits.[3]  However, faced with this very unique factual setting, the Court has consistently drawn a distinction between (1) the entity that was Mr. Phathong's legal employer for workers' compensation purposes – Turnkey – a fact changed by the retroactive sale; and (2) the entity that was actually responsible for safety on the drill rig

_____

this case.  (ECF No. 103, at 4-5.)

[3] Notably, Defendant's Motion for Summary Judgment listed the following as one of its Statements of Material Facts:  "At the time of injury on December 13, 2005, Plaintiff Von J. Phathong was an employee of Turnkey E&P."  (ECF No. 76, at 6 ¶ 33.)  It appears that Defendant is now trying to change its position to argue that Mr. Phathong was an employee of Defendant.

Also, Defendant has repeatedly argued that Plaintiffs' counsel admitted at an oral argument that Defendant was Mr. Phathong's employer.  The Court disagrees.  The retroactive nature of the sale from Defendant to Turnkey created complexities in this case where there otherwise would be few.  The Court finds that counsel on both sides did an admirable job of attempting to sort out the ramifications of the retroactive sale for the Court.  The argument by Plaintiffs' counsel that is cited by Defendant is one such example of this.

at the time of the accident – Defendant – a fact that cannot be undone by the legal maneuvering of the retroactive sale.  Defendant has provided no new evidence or case law that would warrant this Court to suddenly change course on this issue at this late date.  The Court's prior rulings on this issue were in its Order denying Defendant's Motion for Summary Judgment, located at ECF No. 103, and in its oral ruling denying Defendant's Rule 50 Motions on the record during the proceedings before the Court on June 11, 2012 (on the sixth day of the jury trial).

For the same reasons previously stated in these prior rulings, and stated in this Order, Defendant's Rule 50(b) Motion as to this issue is denied.

### 2.    Statutory Employer

At every point of this litigation at which Defendant has argued that it was Mr. Phathong's actual employer, and thus immune from suit under the workers' compensation laws, Defendant has also argued that it is immune from suit as Mr. Phathong's "statutory employer" under the workers' compensation laws.[4]  The present

---

[4] The Colorado Workers' Compensation Act

grants an injured employee compensation from the employer without regard to negligence and, in return, the responsible employer is granted immunity from common-law negligence liability.  To be afforded this immunity, an employer must be a "statutory employer" as contemplated by the [Act].  Although a given company might not be a claimant's employer as understood in the ordinary nomenclature of the common law, it nevertheless might be a statutory employer for workers' compensation coverage and immunity purposes. . . . [The Act] makes general contractors ultimately responsible for injuries to employees of subcontractors.  Its purpose is to prevent employers from avoiding responsibility under the [Act] by contracting out their regular work to uninsured independent contractors. . . .  [W]e hold that the test for whether an alleged employer is a "statutory employer" under [the Act] is whether the work contracted out is part of the employer's "regular business" as defined by its total business operation.  In applying this test, courts should consider the elements of routineness, regularity, and the importance of the contracted service to the regular business of the

Rule 50(b) Motion is no different, with Defendant and its counsel again raising an identical argument to that previously raised.  (ECF No. 181, at 6-8.)  The Court addressed this issue, also, both in its Order denying Defendant's Motion for Summary Judgment (ECF No. 103), and in its oral ruling denying Defendant's Rule 50 Motions on the record during the proceedings before the Court on June 11, 2012 (on the sixth day of the jury trial).

Defendant's basis for arguing that it was a "statutory employer" of Mr. Phathong is that it subcontracted out its drilling operations to Turnkey, and thus remained as a type of general contractor on the project, remaining in the employment chain between EnCana and Turnkey.  This argument emphasizes the ways in which Defendant remained obligated under its original contracts with EnCana.  However, Defendant's argument is belied by its own statements of material facts presented in its Motion for Summary Judgment.  (ECF No. 76, at 6-7 ¶¶ 34, 37, 39, 41.)  The fact that Defendant had continuing obligations to EnCana under their original contracts does not mean the relationship between Defendant and Turnkey was one of a general contractor and subcontractor, respectively.  Instead, as the Court ruled on Defendant's Rule 50 Motion at trial,

> [T]he only reasonable interpretation of the evidence in this case is that Defendant is not a "statutory employer" under the [Colorado Workers' Compensation] Act. . . .  The only reasonable interpretation of the evidence in this case is that Defendant sold its drilling operations to Turnkey on December 13, 2005.  The relationship between Defendant and

---

employer.

*Finlay v. Storage Tech. Corp.*, 764 P.2d 62, 63-64, 67 (Colo. 1988); *see also* Colo. Rev. Stat. § 8-41-401.

Turnkey pursuant to that sale was not one of a general contractor and subcontractor as envisioned by the Colorado Supreme Court in *Finlay*. This was a sale of drilling operations, such that EnCana remained the general contractor, and Turnkey took over the subcontractor duties of running the drilling operations.  In these circumstances, Defendant is not a "statutory employer" entitled to immunity under the Colorado Workers' Compensation Act.

The Court denies Defendant's Rule 50(b) Motion on this same basis.

### 3.      Immunity as a Statutory Employer Due to Landowner Status

Defendant also argues that it is immune from suit as a statutory employer

because it was a landowner under Colorado Revised Statute § 8-41-402, which

provides, inter alia,

> Every person, company, or corporation owning any real property or improvements thereon and contracting out any work done on and to said property to any contractor, subcontractor, or person who hires or uses employees in the doing of such work shall be deemed to be an employer under the terms of articles 40 to 47 of this title.

Colo. Rev. Stat. § 8-41-402(1).  For the reasons set forth above (regarding the proper

interpretation of Defendant's sale of its drilling operations to Turnkey) and set forth

below (regarding how Defendant cannot be fairly described as a landowner of the land

at issue), this argument fails.

For the aforementioned reasons, Defendant's Rule 50(b) Motion for judgment as

a matter of law is denied.

### B.      Rule 59 Motion for a New Trial

### 1.      Premises Liability

At trial on its Rule 50 Motion, Defendant argued that this case was governed by

the Colorado Premises Liability Statute, Colorado Revised Statute § 13-21-115, and

8

therefore Plaintiffs could not maintain their simple negligence claim.  The Court

denied the Motion at trial with a thorough analysis.  Now, in arguing for a new trial under

Rule 59, Defendant makes the same arguments for why it should have been deemed a

landowner under the Premises Liability Statute.  With no new argument presented, the

Court need not engage in any new analysis here, other than to simply repeat the Court's

oral ruling at trial denying Defendant's Rule 50 Motion on this issue:

> In Plaintiffs' Rule 50 Motion, they move for judgment as a matter of law as to the issue of whether the Premises Liability Act, Colorado Revised Statute section 13-21-115, applies in this action.  As background, Plaintiffs' operative Complaint pled two alternative theories of recovery (in addition to the third claim for loss of consortium).  Plaintiffs' first claim was a simple negligence claim, and their second claim was under the Premises Liability Act.  The Court has already held, at ECF No. 162, that it was not improper to have pleaded alternative theories of recovery, even if inconsistent, and therefore that Plaintiffs are not bound by the allegations in the Complaint under the second cause of action that the Premises Liability Act applies.
>
> The parties' trial briefs, and arguments on Plaintiffs' Rule 50 Motion, indicate their agreement of the following.  If the Premises Liability Act does apply here, then Plaintiffs cannot pursue a simple negligence claim against Defendant, but instead must pursue their claim under the Premises Liability Act.  However, if the Premises Liability Act does not apply here, then obviously Plaintiffs cannot pursue a claim under that Act, but may pursue a general negligence cause of action.  *See also Vigil v. Franklin*, 103 P.3d 322 (Colo. 2004).
>
> The Court's decision on this issue centers on Colorado Revised Statute § 13-21-115(2), which provides that the Premises Liability Act applies to injury occurring "by reason of the condition of [the real] property, or activities conducted or circumstances existing on such property . . . ."  As the Colorado Supreme Court stated in *Pierson v. Black Canyon Aggregates, Inc.*, 48 P.3d 1215 (Colo. 2002), if the injury was caused by "activities conducted or circumstances existing on such property," those activities or circumstances causing the injury must be "directly related to the real property itself in order to be within the rubric of the statute."  *Id.* at 1221.
>
> Several decisions from federal district court judges in this Circuit have explained this requirement in more detail, holding that for the Premises Liability Act to apply, the "activities or circumstances" causing the injury must be activities or circumstances that are inherently related to

the land.  Thus, in *Giebink v. Fischer*, 709 F. Supp. 1012 (D. Colo. 1989), the Court held that the Premises Liability Act did not apply to a claim against a ski resort based on a ski instructor's alleged negligent failure to properly supervise a child in a ski school class.  The Court held that the activity in question – negligent supervision – was not inherently related to the land.  *Id.* at 1017.  In so holding, the court noted that to apply the Premises Liability Act to any activities occurring on land, as opposed to only those activities inherently related to the land, "would shield all types of negligent activities from the negligence standard, such as in a case where a doctor negligently treats a patient at his privately owned clinic." *Id.* at 1017 n.5.

As another example, the case of *Geringer v. Wildhorn Ranch, Inc.*, 706 F. Supp. 1442 (D. Colo. 1998), involved the death of guests of a resort in a paddle-boating accident on a lake at the resort.  The plaintiff brought a Premises Liability Act claim based on the resort's alleged negligence in the maintenance and condition of the paddleboat at issue. The court held that the Premises Liability Act did not apply in the case of a landowner's negligent supply of a chattel to a guest.  *Id.* at 1446.  In so holding, the court stated that the Premises Liability Act "does not establish a feudal realm of absolute protection from liability for simple negligence based only on a defendant's status as landowner."

Just last year, one of my colleagues again restated the rule that the Colorado Premises Liability Act's applicability to "activities conducted or circumstances existing on [the] property" only applies to "activities and circumstances that are inherently related to the land."  *Larrieu v. Best Buy Stores, L.P.*, No. 10-cv-01883, 2011 WL 3157011, at *3 (D. Colo. July 27, 2011).

In this case, the evidence at trial indicated that Mr. Phathong was injured on Defendant's drill rig when the wrong size crossover sub was used to switch out a heavy weight drill collar.  Because this caused the drill collar to not be threaded properly, when operation of the drill began, Mr. Phathong's body became trapped between the derrick leg and drill collar.  Plaintiffs' claims are based, *inter alia*, on Defendant's employees' alleged actions at the time of the accident in using the wrong size crossover sub, and in Defendant's failure to provide its employees with sufficient safety training prior to the accident.  Activities such as using the wrong equipment on a drill rig and failing to properly train employees are not activities that are "directly related to the real property itself" or that are "inherently related to the land."  Therefore, the Colorado Premises Liability Act does not apply, and Plaintiffs are entitled to judgment as a matter of law on this issue.  Thus, Plaintiffs' two remaining claims in this action are for simple negligence, and for loss of consortium.

For these same reasons, Defendant's Rule 59 Motion as to this issue is denied.

**2.    Statute of Limitations**

Defendant also moves for a new trial on the ground that the Court allegedly gave legally flawed statute-of-limitations instructions to the jury.  (ECF No. 181, at 11-12.) The Court issued three detailed instructions to the jury regarding statute-of-limitations issues, one regarding the statute of limitations and claim accrual, one defining equitable tolling, and one listing the required elements for equitable tolling to apply.  The verdict form submitted to the jury asked the jury to resolve the statute-of-limitations issues first, and to proceed to evaluating liability only if the jury found that Plaintiffs' claims were not time-barred.

As further background, the Court previously denied Defendant's Motion for Summary Judgment on the statute-of-limitations issue.  (ECF No. 103, at 8-11.) Defendant also moved under Rule 50 at trial on this issue, which the Court denied in its oral ruling taking place on the record during the proceedings before the Court on June 11, 2012 (on the sixth day of the jury trial).  In short, both at summary judgment stage and at the Rule 50 stage, the Court held that there were sufficiently reasonable disputes between the parties regarding when Plaintiffs' claims accrued, and regarding whether equitable tolling applies, such that it was appropriate for the jury to decide whether Plaintiffs' claims were time-barred.

Defendant has repeatedly argued throughout this litigation that Plaintiffs' claims accrued on December 13, 2005, the date of the injury, which is usually the case in straight-forward personal injury cases.  Plaintiffs, however, have argued that at the time of the accident, and for years after the accident, Plaintiffs believed that Defendant was Mr. Phathong's legal employer at the time of the accident, and thus could not be sued

for his injuries.  In the meantime, Plaintiffs brought suit in state court against EnCana, the general contractor on the project and the entity that the jury in this case found to be ten percent at fault for Plaintiffs' injuries.  Plaintiffs contend that it was not until discovery was undertaken in the EnCana state court action in the spring of 2009 that they learned of the retroactive nature of the sale between Defendant and Turnkey.[5]

Thus, Plaintiffs contend that it was not until spring 2009 that they learned that they had viable causes of action against Defendant, given that Turnkey (not Defendant) was Mr. Phathong's legal employer at the time of the accident for workers' compensation purposes (which is reflected by the fact that Turnkey paid Mr. Phathong's workers' compensation benefits).  Because of this, Plaintiffs argued that their claims accrued no earlier than the spring of 2009.  The Court has repeatedly held that these two differing views on the accrual date were appropriately left for the jury to decide.[6] The Court also found that Plaintiffs' equitable tolling argument was properly submitted for the jury to decide.  The jury's verdict form indicates its conclusion that Plaintiffs'

---

[5] Defendant has repeatedly and unpersuasively argued that a letter sent to Plaintiffs in 2006 reasonably put Plaintiffs on notice that Turnkey became Mr. Phathong's employer. However, the letter in no way mentioned the retroactive nature of the sale, and so did not put Plaintiffs on notice that an entity other than Defendant might have been Mr. Phathong's legal employer at the time of the accident.

[6] Under Colorado law, a claim for bodily injury does not accrue "until the plaintiff knows, or should know, in the exercise of reasonable diligence, all material facts to show the elements of that cause of action."  *Miller v. Armstrong World Indus., Inc.*, 817 P.2d 111, 113 (Colo. 1991). The time when a plaintiff should have discovered, by reasonable diligence, that a cause of action accrued is typically a question of fact that must be resolved by the trier of fact.  *See Morris v. Geer*, 720 P.2d 994, 997 (Colo. 1986).

In this Court's Order denying Defendant's Motion for Summary Judgment, in the text and a long footnote, the Court addressed the unique issue presented here, namely, when a claim accrues when a plaintiff does not learn until a later time that he/she has a cause of action against a particular defendant.  (*See* ECF No. 103, at 10-11 & n.3.)

claims were not time-barred.

Defendant's current challenge first argues that the Court's jury instruction regarding claim accrual improperly instructed the jury to determine whether the claim accrued before or after April 6, 2008, the date exactly two years prior to the date on which Plaintiffs filed this action.  Defendant argues that the Court instead should have instructed the jury that the claim accrued on the date of the accident.  The Court (again) disagrees.  The Court has repeatedly found that it was for the jury to decide whether Plaintiffs' claims accrued on December 13, 2005, or at some later date.  Given this, the Court's instruction focusing the jury's attention to the date exactly two years prior to the accident was proper:  if the claims accrued before that date, they would be time-barred, if they accrued on or after that date, they would not be time-barred.

Defendant also challenges the particular jury instruction which read, "regarding the accrual of Plaintiffs' claims for purposes of the running of the statute of limitations, the question is when Plaintiffs knew, or in the exercise of reasonable diligence should have known, of the retroactive nature of the sale of Defendant Tesco's drilling operations to Turnkey."  As to this instruction, the Court acted within its discretion to tailor the instruction to the particular facts of this case.  *See United States v. Heredia*, 483 F.3d 913, 920 (9th Cir. 2007) ("A district judge, in the exercise of his discretion, may say more to tailor the instruction to the particular facts of the case.").  The retroactive nature of the sale of Defendant's drilling operations to Turnkey created several unique and challenging legal issues in this action.  It was the Court's opinion that these unique and challenging issues could only be simplified for the jury with certain case-specific instructions.  *See United States v. Brandon*, 17 F.3d 409, 453 (1st Cir. 1994) ("[O]n

13

particular facts, it might so mislead a jury to give a general instruction, rather than one tailored to a specific defendant or rather than no instruction at all, as to be an abuse of discretion, but we emphasize that judgments of this kind are primarily entrusted in the trial judge who inevitably has a superior feel for the dynamics of the trial and the likely reaction of the jury.").

For the aforementioned reasons, the Court is confident it did not err in the statute-of-limitations instructions provided to the jury.  Accordingly, Defendant is not entitled to a new trial on this basis.

### 3.      Punitive Damages

Defendant also moves for a new trial under Rule 59 based on several arguments related to punitive damages.  (ECF No. 181, at 12-14.)  Because of how Defendant has attempted to spin and indeed twist the record in this action as it relates to the issue of punitive damages, the Court believes it important to recount that record in detail.

Plaintiffs' original Complaint in this action, filed on April 6, 2010, did not include a claim for punitive damages, although the Prayer for Relief did indicate that Plaintiffs would ultimately seek to amend their Complaint to add a punitive damages claim.  (ECF No. 1, at 8.)  On October 29, 2010, Plaintiffs filed a Motion for Leave to Amend Complaint seeking to add a claim for punitive damages, pointing out that Colorado law prohibits a party from making a claim for punitive damages until after initial Rule 26 disclosures have been exchanged and the party making the claim establishes *prima facie* proof of a triable issue as to punitive damages.  (ECF No. 38.)  Defendant opposed the motion to amend (ECF No. 40), but U.S. Magistrate Judge Michael J. Watanabe granted the motion (ECF No. 43), and Plaintiffs' operative First Amended

14

Complaint, which included a claim for punitive damages, was filed on December 10, 2010 (ECF No. 44).  Defendant did not file an appeal of Magistrate Judge Watanabe's Order allowing amendment to this Court.

On December 27, 2010, Defendant then filed a Motion to Dismiss the First Amended Complaint.  (ECF No. 46.)  In the Motion to Dismiss, Defendant argued that Plaintiffs' claims were time-barred, and that Defendant was immune from suit as a statutory employer.  (*Id.*)  Defendant's Motion to Dismiss only makes one statement regarding why the punitive damage claim should be dismissed, to wit, "Since Plaintiffs' claims are time-barred and Tesco should be granted statutory employer immunity, Plaintiffs' assertions that they are entitled to exemplary damages are futile."  (*Id.* at 2 ¶ 5.)  On May 20, 2011, Defendant then filed a Motion for Summary Judgment, again arguing that it was immune from suit as a statutory employer, and that Plaintiffs' claims were time-barred.  (ECF No. 76.)  Defendant's Motion for Summary Judgment did not even mention Plaintiffs' claim for punitive damages, and thus obviously did not move for summary judgment on the punitive damages claim, *e.g.*, by arguing that a lack of evidence supported the claim.  (*See id.*)

On November 30, 2011, the Court denied Defendant's Motion for Summary Judgment, holding that Defendant had not carried its burden of showing that it was a "statutory employer," and holding that there was sufficient evidence on both sides such that the jury would decide whether Plaintiffs' claims were time-barred.  (ECF No. 103.)  Because the statutory employer issue and statute of limitations issue were the same two issues argued in Defendant's Motion to Dismiss, the Court denied Defendant's Motion to Dismiss as moot given the Court's ruling on Defendant's Motion for Summary

15

Judgment. (*Id.*)  As Plaintiffs point out, at oral argument on these two Motions, counsel

for Defendant conceded that a ruling on Defendant's Motion for Summary Judgment

would moot Defendant's Motion to Dismiss.  (ECF No. 99.)  And indeed, that decision

was proper, including as to punitive damages.  To repeat, Defendant only argued in the

Motion to Dismiss that the punitive damages claim should be dismissed because

Defendant was immune from suit as a statutory employer and because Plaintiffs' claims

were time-barred.  By rejecting those two arguments, Defendant's statement that the

punitive damages claim should be dismissed necessarily failed.

     The Amended Pretrial Order clearly states that Plaintiffs are bringing a claim for

punitive damages in this action.  (ECF No. 123, at 3.)  A footnote in the Amended

Pretrial Order states, "The Defendant Tesco objects to the claim for punitive damages

for the reasons express in its motion to dismiss said claim and the Court having not

ruled on that issue." (*Id.*)

     At the Final Trial Preparation Conference before the Court, Defendant failed to

raise any argument regarding punitive damages.  Also, as trial approached, both parties

submitted their proposed jury instructions to Court.  Plaintiffs submitted two proposed

instructions regarding punitive damages, one contained within what were purportedly

stipulated instructions.  Defendant objected to both, indicating its awareness that the

punitive damages claims were at issue.  (ECF No. 115, at 5.)[7]

     At trial, Defendant did not move under Rule 50 for judgment as a matter of law on

Plaintiffs' punitive damages claim either at the close of Plaintiffs' evidence or at the

---

[7] Defendant's Objections to the proposed instructions repeated the same meritless
argument that the Court never ruled on its Motion to Dismiss the punitive damages claim.  (*Id.*)

close of Defendant's evidence, both of which occurred on June 8, 2012.  On June 12,

2012, the Court issued its oral ruling on the Rule 50 Motions.  The Court then

proceeded with the jury instruction charging conference, at which Defendant's counsel

represented that he was not aware the punitive damage claims were still at issue, and

tardily and cursorily argued that Rule 50 was warranted on the punitive damages claim.

The Court denied that Rule 50 Motion.

Having thoroughly recited the procedural history regarding Plaintiffs' punitive

damages claim, the Court turns to Defendant's arguments regarding punitive damages

raised in its currently pending Rule 59 Motion.  First, Defendant argues that

> [t]he Court did not decide the issues addressed in regard to the
> Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint for
> punitive damages until June 11, 2012, thereby preventing Defendant from
> both conducting discovery as to the factual basis for any such claim and
> presenting evidence and a full argument on the issues raised in the
> Amended Complaint and preventing Defendant from adequately preparing
> for closing arguments. . . . Given the eleventh hour of the punitive
> damages claim, Tesco was prejudiced in defending the [sic] against the
> claim . . . .

(ECF No. 181, at 12, 14.)  This argument is frivolous, indeed ludicrous, and the Court

will not countenance Defendant blaming the Court for its counsel's own failings.  First,

the early procedural history of this case made it perfectly clear to Defendant that

Plaintiffs were pursuing a claim for punitive damages in this action, and at no point was

that claim dismissed by the Court.  Defendant made a tactical decision not to conduct

discovery on the punitive damages claim.  It also chose not to present argument to the

jury regarding this claim.  Therefore, Defendant blaming the Court for what did or did not

transpire in this case with regard to Plaintiffs' punitive damages claim is flatly rejected.

Moreover, prior to the jury instruction charging conference, the only time during

this litigation when Defendant sought dismissal of Plaintiffs' punitive damages claim was in the one sentence in the Motion to Dismiss, when it did so based on its statutory employer and statute-of-limitations arguments.  As has been explained, the Court properly denied that Motion, and Defendant's suggestion that the Court never ruled on the issue is patently frivolous.  Throughout this litigation, Defendant failed to actively pursue dismissal of the punitive damages claim.  For example, Defendant could have objected to the Magistrate Judge's decision to allow Plaintiffs to amend their complaint to add a punitive damages claim, but failed to do so.  Defendant also could have moved for summary judgment on the punitive damages claim, arguing that Plaintiffs had failed to come forward with sufficient evidence supporting an award of punitive damages, but failed to do so.  Defendant also could have moved under Rule 50 for dismissal of the claim at the close of Plaintiffs' evidence and at the close of its own evidence, but failed to do so.

Second, Defendant argues that Plaintiffs failed to present sufficient evidence at trial supporting the punitive damages claim, an argument presented for the first time at the jury instruction charging conference and presented now for only the second time in this litigation.  (ECF No. 181, at 13-14.)  Colorado Revised Statute § 13-21-102(1)(a) provides,

> In all civil actions in which damages are assessed by a jury for a wrong done to the person or to personal or real property, and the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct, the jury, in addition to the actual damages sustained by such party, may award him reasonable exemplary damages.

"Willful and wanton conduct" is defined in the statute as "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and

18

recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." Colo. Rev. Stat. § 13-21-102(1)(b). The Colorado Supreme Court has interpreted this statute such that "the statutory requirements of section 13-21-102 are met" where "the defendant is conscious of his conduct and the existing conditions and knew or should have known that injury would result." *Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo. 2005); *see also Stamp v. Vail Corp.*, 172 P.3d 437, 449 (Colo. 2007) ("Conduct is willful and wanton if it is a dangerous course of action that is consciously chosen with knowledge of facts, which to a reasonable mind creates a strong probability that injury to others will result.") (citation and internal quotations omitted). "Exemplary damages against the party against whom the claim is asserted shall only be awarded in a civil action when the party asserting the claim proves beyond a reasonable doubt the commission of a wrong under the circumstances set forth in section 13-21-102." Colo. Rev. Stat. § 13-25-127(2); *see also Coors*, 112 P.3d at 65. At trial, the Court gave a thorough instruction to the jury on punitive damages that accurately reflected this applicable law.[8]

---

[8] The instruction read,

> If you find in favor of Plaintiff Von Phathong on his negligence claim, then you shall consider whether he should recover punitive damages against Defendant Tesco. If you find beyond a reasonable doubt that Defendant Tesco acted in a willful and wanton manner, in causing Plaintiff Von Phathong's damages you shall determine the amount of punitive damages, if any, that Plaintiff Von Phathong should recover.
> Punitive damages, if awarded, are to punish the defendant and to serve as an example to others.
> "Reasonable doubt" means a doubt based upon reason and common sense which arises from a fair and thoughtful consideration of all the evidence, or the lack of evidence, in the case. It is not a vague, speculative, or imaginary doubt, but one that would cause reasonable persons to hesitate to act in matters of importance to themselves.

Plaintiffs presented sufficient evidence at trial as to the wrongfulness of Defendant's conduct, such that the punitive damages claim was properly submitted to the jury for consideration.  One or more witnesses at trial – including Plaintiffs' expert witness as to drilling operations and Defendant's own drill rig supervisor and other employees – testified to one or more the following:  (1) working on a drill rig is dangerous, warranting sufficient safety precautions; (2) Defendant had inadequate safety training for its workers; (3) of all the different drill rigs certain witnesses had worked on, Defendant's drill rig was the worst in terms of workplace safety; (4) the work environment on Defendant's drill rig was one of threats and intimidation by supervisors, such that workers such as Mr. Phathong knew they could be fired if they ever disobeyed orders; (5) workers were always pushed to hurry their work in this dangerous work environment; (6) on the evening of the accident, the depths at which drilling was being done was unsafe, given the small size of the drill rig; (7) the decision was made by Mr. Phathong's superiors that night to change from a 6 ½-inch drill collar to an 8-inch drill collar so that they would be able to drill faster; (8) a correctly sized crossover sub was necessary to safely change the drill collars, but the correctly sized crossover sub was not on the drill rig that night; (9) despite not having the correctly sized crossover sub, the decision was made by Defendant's superiors to nevertheless change drill collars; (10) the snatch block, which would have made changing the drill collar safer, could not

---

"Willful and wanton conduct" means an act or omission purposefully committed by a person who must have realized that the conduct was dangerous, and which conduct was done heedlessly and recklessly, either without regard to the consequences, or without regard to the rights and safety of others, particularly the plaintiff.

be used because all of its pieces were not on the drill rig; (11) a superior gave an order for someone to grab a set of tongs to help change the drill collar, and Mr. Phathong volunteered and grab the tongs; (12) using the wrong crossover sub meant that the drill collar would not be threaded properly; (13) because the wrong crossover sub was used, when operations began the drill started up and spun unusually fast, pinning Mr. Phathong up against the derrick leg and causing his injuries; (14) the next night supervisors on the drill rig decided to stick with the 6 ½-inch drill collar and were able to complete the work; and (15) Defendant's incident report regarding the accident stated that the accident occurred because the "threads fouled," suggesting that something was wrong with the threads themselves, not that the wrong crossover sub was used, which necessarily meant that it wouldn't be threaded properly.  All of this evidence considered together, along with other evidence and supporting evidence presented at trial, could lead a reasonable jury to find beyond a reasonable doubt that Defendant was "conscious of [its] conduct and the existing conditions and knew or should have known that injury would result," *Coors*, 112 P.3d at 66, and that Defendant took "a dangerous course of action that [was] consciously chosen with knowledge of facts, which to a reasonable mind creates a strong probability that injury to others will result," *Stamp*, 172 P.3d at 449.

Because Defendant failed to effectively pursue the dismissal of Plaintiffs' punitive damage claim throughout this litigation, and because sufficient evidence supporting Plaintiffs' punitive damage claim was presented at trial, Defendant's Rule 59 Motion as it relates to Plaintiffs' punitive damages claim is denied.

### 4.      Assumption of Risk and Comparative Negligence

In one small paragraph in its Motion (ECF No. 181, at 14), and with two full

pages in its Reply brief (ECF No. 181, at 8-9), Defendant argues that the Court erred by

failing to instruct the jury regarding Mr. Phathong's own assumption of risk and

comparative negligence in voluntarily grabbing the tongs prior to the accident.  As to

comparative negligence, the Court stands by its previous bases for granting Plaintiffs'

Rule 50 Motion on this issue, in which Plaintiffs argued that no reasonable fact-finder

could find Plaintiff comparatively negligent in causing his injuries.  In that oral ruling, the

Court stated,

> Plaintiffs also moved for judgment as a matter of law on the issue of whether Plaintiff Von Phathong himself can be considered comparatively negligent in causing the accident.  At the Rule 50 hearing, Plaintiffs emphasized that Mr. Phathong was simply following a superior's order when he jumped in to grab the tongs.  They also argued that, given the culture of intimidation on the rig, Mr. Phathong could have been terminated if he disobeyed the order.  In response, Defendant's primary argument seemed to be that Mr. Phathong was at fault for taking what he knew to be a sometimes dangerous job.  Defendant also argued that the order given was only made generally to the workers in the area, and it was Mr. Phathong who voluntarily jumped in to grab the tongs.  Defendant further argued that Mr. Phathong was on notice of the dangerous situation at the time, because of another dangerous incident that had occurred just minutes before.
>
> The Court holds that Plaintiffs are entitled to judgment as a matter of law on this issue.  Based on the evidence presented at trial, no reasonable jury could conclude that Plaintiff was comparatively negligent in causing the accident.  First, Defendant's argument blaming Plaintiff for accepting employment on the drill rig is ludicrous.  His acceptance of employment months before was not negligent, nor was it a cause of the accident.  In the Court's view equating acceptance of employment in a risky industry with legal negligence is a dangerous proposition.  The adverse implications for workers employed in risky or dangerous industries were the Court to adopt Defendant's reasoning on this issue would be extraordinary, and the Court emphatically rejects Defendant's contention on this point.
>
> Defendant's other arguments are also unavailing because a direct

order was given to the workers in the area to grab the tongs, and it was understood that workers on that rig faced harsh penalties for refusing to obey orders.  Finding Mr. Phathong comparatively negligent would have the perverse result of punishing him for being the one to step up and volunteer to grab the tongs. This also the Court will not do.

There was no evidence at trial that Mr. Phathong had any involvement in the decision to make the change to an 8-inch drill collar. There was no evidence at trial that Mr. Phathong had any responsibility for ensuring that the proper equipment was on the drill rig.  There was no evidence at trial that Mr. Phathong trained any of the workers on the drill rig.  There was no evidence at trial that Mr. Phathong did something he wasn't supposed to do.  There was no evidence at trial that Mr. Phathong did his job improperly in any way.  Simply put, there is no evidence for which a reasonable jury could find that negligence on the part of Mr. Phathong in any way caused the accident and his injuries.

(Court's oral ruling on the parties' Rule 50 Motions, on day six of the jury trial on June 12, 2012.)

As to Plaintiffs' assumption of risk argument, the Court rejects the argument for similar reasons.  Defendant proposed the following jury instruction regarding assumption of risk:  "Negligence may also mean assumption of risk.  A person assumes the risk of injury or damage if the person voluntarily or unreasonably exposes himself or herself to such injury or damage with knowledge or appreciation of the danger and risk involved."  (ECF No. 113, at 6.)  That is an accurate statement of law.  *See, e.g.*, Colo. Jury Instructions, Civil 9:6 (4th ed. 2012).  However, the Court rejected the proposed instruction, because the evidence at trial could not lead a reasonable jury to conclude that Mr. Phathong voluntarily or unreasonably exposed himself to the conditions (the changing of the drill collar with the wrong sized crossover sub) that led to his injuries. As previously stated, given the culture of threats and intimidation on the rig and the fact that a superior ordered someone to grab the tongs, among other evidence, a reasonable jury could not conclude that Mr. Phathong voluntarily or unreasonably

grabbed the tongs.

**5.      Designation of Turnkey as a Non-Party at Fault**

Defendant also challenges the Court's decision to strike Defendant's designation of Turnkey as a non-party at fault.[9]  The Court stands by its previously stated bases for striking Defendant's designation of Turnkey as a non-party at fault, located at ECF No. 162, at pages 3-6.  *See, e.g.*, ECF No. 162, at 5 & n.3 ("Turnkey had absolutely no actual, 'on the ground' involvement in the operations on the drill rig that resulted in the December 13, 2005 accident. . . . While the retroactive sale changed who Mr. Phathong's legal employer was at the time of the accident, such a retroactive sale cannot change the facts regarding who, if anyone, caused the accident by a negligent act or negligent failure to act.  Of course, if Turnkey, through its purchase of Defendant's drilling operations, agreed to assume any and all liability of Defendant incurred following the retroactive sale date and time, Defendant would likely to entitled to recover from Turnkey for any liability Defendant incurs in this action.  However, the issue of contractual assumption of liability for negligence is entirely different and distinct [from] the issue of who, if anyone, was actually negligent or at fault for the accident that occurred.").  For the reasons previously stated in this Order and in the Court's Order resolving issues raised in the trial briefs (ECF No. 162), the fact that Turnkey was Mr. Phathong's legal employer for purposes of workers' compensation, that does not mean Turnkey could be negligent or otherwise at fault for what occurred on the drill rig at 3:30 a.m. on December 13, 2005.

---

[9] On the verdict form submitted to the jury, the jury was only asked to apportion fault between Defendant and the general contractor on the project, EnCana.

For all of the aforementioned reasons, Defendant has not met its burden of showing entitlement to a new trial in this action under Rule 59.

### III.  CONCLUSION

In accordance with the foregoing, the Court hereby ORDERS that Defendant's Rule 50(b) Motion or, in the Alternative, a Motion for a New Trial (ECF No. 181) is DENIED.

Dated this 10th day of October, 2012.

BY THE COURT:

William J. Martinez
United States District Judge